**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**MARSELLES JEFFERSON,**
804 Venable St
McComb, MS 39648

*Plaintiff*,

v.

**SCIENCE APPLICATIONS INTERNATIONAL CORPORATION (SAIC),**
12010 Sunset Hills Rd
Reston VA, 20190

*Defendant*.

Civil Action No. 1:26-cv-01269

JURY TRIAL DEMANDED

## COMPLAINT

## I. INTRODUCTION

1. This is an action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., for associational discrimination and retaliation. The ADA prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). The ADA further prohibits employers from retaliating against an employee for opposing conduct made unlawful by the ADA. 42 U.S.C. § 12203.

2. Plaintiff was subjected to adverse employment actions, including removal from his leadership role, being directed to take family leave, placement on unpaid leave, and termination, because of his known association with his disabled spouse and in retaliation for opposing Defendant's disparate treatment of him based on that association.

3. This Complaint is limited to Plaintiff's ADA claims and does not expand upon or duplicate the distinct statutory claims asserted in Plaintiff's separate and pending whistleblower action in *Jefferson v. SAIC*, No. 24-1692 (D.D.C.).

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 12117 (referring to 42 U.S.C. § 2000e-5).

5. Venue is proper in this District under 42 U.S.C. §§ 12117(a) and 2000e-5(f)(3) because the activities and unlawful employment practices were undertaken pursuant to a contract with the federal government issued by the Federal Systems Integration Management Center (FEDSIM), which is a program within the General Services Administration (GSA) and is located in the District of Columbia. Defendant communicated with FEDSIM officials concerning the actions being taken against the Plaintiff. Additionally, Defendant has two offices in this District, conducts substantial business here, maintains significant federal contracting operations directed from and coordinated through this District, and aspects of the relevant employment decisions affecting Plaintiff were made or approved by management operating within the United States. Venue is also proper in this District because Plaintiff has a related case pending before this Court.

6. In the alternative, if this Court concludes venue is imperfect, transfer rather than dismissal is appropriate under 28 U.S.C. § 1406(a).

## III. PARTIES

7. Plaintiff Marselles Jefferson is an individual residing in McComb, Mississippi.

8. Defendant Science Applications International Corporation ("SAIC") is a corporation with its principal place of business in Reston, Virginia and conducts substantial business in the District of Columbia.

## IV. ADMINISTRATIVE EXHAUSTION

9. Plaintiff exhausted his administrative remedies by filing timely complaints with the U.S. Department of Labor Office of Federal Contract Compliance Programs ("OFCCP") on August 18, 2022, and the Virginia Office of the Attorney General's Office of Civil Rights ("OHR") on October 16, 2022. His complaint was transferred to the Equal Employment Opportunity Commission ("EEOC") on or about September 7, 2023.

10. The EEOC issued a Notice of Right to Sue on January 14, 2026.

11. This action is timely filed within 90 days of receipt of that Notice.

## V. FACTUAL ALLEGATIONS

12. Plaintiff was employed by Defendant as a cybersecurity professional supporting a federal contract from December 2020 to August 2022.

13. Plaintiff performed his work for Defendant at a United States Air Force installation in Germany in furtherance of that federal contract.

14. Plaintiff is a United States citizen employed abroad by a United States corporation. The Americans with Disabilities Act applies to United States citizens employed in foreign countries by United States employers, and Defendant is subject to the ADA's requirements with respect to Plaintiff's employment. 42 U.S.C. § 12111(4)-(5), 12112(c).

15. At all relevant times, Defendant employed Jeffrey Burdett (Program Director), Matthew Jamison (Project Manager), and Allen "Chris" Johnson (Networks, Systems, and

Cyber Manager) as managers and supervisors responsible for operations and personnel associated with the federal contract. These individuals comprise Plaintiff's chain of command.

16. Plaintiff was qualified for his position and performed his duties satisfactorily. Prior to the adverse actions described herein, Defendant treated Plaintiff as a valued employee, as reflected by his continued compensation, bonus eligibility, and advancement. In February 2022, Plaintiff was promoted to the Lead Cyber/Information Assurance ("IA") position.

17. Plaintiff's spouse suffered a stroke in or around January 2019, resulting in significant and ongoing physical and mental impairments that substantially limit one or more major life activities, including her mobility, motor functions, eyesight, and communication. Plaintiff's spouse also suffers from chronic asthma. As a result of these health conditions, she required regular medical care and assistance.

18. Plaintiff provided care to his spouse to assist with her serious disabilities.

19. Defendant, through its management, was aware of Plaintiff's spouse's disability and Plaintiff's caregiving responsibilities. During the period from March through August 2022, Plaintiff communicated directly with Johnson and other members of SAIC management about his spouse's disability and her caregiving needs.

20. In connection with his spouse's disability, Plaintiff utilized an established, authorized telework arrangement, as well as approved leave, to provide necessary care. Defendant was aware that Plaintiff's telework was based on his spouse's medical condition and her caregiving needs, and Plaintiff provided supporting documentation reflecting those needs.

21. Defendant's policies permitted flexible and virtual work arrangements based on role responsibilities and operational needs, yet Defendant ultimately departed from its established practices with respect to Plaintiff.

22. At all times relevant to the issues raised in this Complaint, Reuben Gjellstad served as the local Air Force Information Systems Security Manager ("ISSM") and Jonathan "Myles" Powell served as the Communications Squadron Director and Gjellstad's supervisor. Together, they interacted on a regular basis with Plaintiff and Defendant concerning work performed under the contract.

23. In or around late March 2022, after Plaintiff explained to Gjellstad that he teleworked to care for his disabled spouse, Gjellstad responded with skepticism and hostility toward Plaintiff's association with his disabled spouse. Gjellstad questioned the legitimacy of Plaintiff's spouse's disability and expressed his intent to take action to revoke Plaintiff's teleworking arrangement.

24. Plaintiff reported Gjellstad's remarks and his expressed intent to end Plaintiff's disability-related telework to SAIC management. Thereafter, SAIC management acted consistently with Gjellstad's discriminatory bias by restricting Plaintiff's telework and altering his work conditions.

25. In or around early April 2022, Defendant began restricting and rescinding Plaintiff's previously approved telework arrangements and reevaluating Plaintiff's continued access to telework. This occurred even though other employees similarly situated to Plaintiff in role and responsibilities—but who did not have a disabled spouse—were permitted to telework under less restrictive conditions and for non-medical reasons.

26. Defendant's inconsistent application of its telework policies demonstrates that Plaintiff was treated less favorably because of his association with his disabled spouse.

27. For example, an IT employee was permitted to telework for non-medical reasons under less restrictive conditions and without challenge, as reflected in internal communications

involving SAIC management. In contrast, Plaintiff's disability-related telework was subjected to heightened scrutiny and demands for documentation, before being ultimately revoked.

28. Defendant treated Plaintiff's disability-related caregiving responsibilities as incompatible with his Lead role and acted on assumptions that Plaintiff's need to telework or take leave to care for his disabled spouse would interfere with his ability to perform his duties.

29. Defendant, through its management, expressed the view that Plaintiff's association with his disabled spouse caused additional work stress.

30. Defendant, through its management, claimed that Plaintiff would fall behind his work and fail to fulfill his responsibilities if he took time off to care for his disabled spouse.

31. Defendant relied on assumptions and stereotypes about Plaintiff's association with a disabled individual when making employment decisions, rather than any individualized assessment of Plaintiff's actual job performance.

32. On or about April 7, 2022, at a meeting involving Defendant's managers, Plaintiff objected to the restrictions on his telework, highlighting that the restrictions on telework were not based upon any legitimate performance issue.

33. On or about April 27, 2022, Defendant removed Plaintiff from his leadership role.

34. On or about April 27, 2022, Defendant directed Plaintiff to take leave because of his spouse's disability. Defendant did not present leave as an option for discussion, but as the predetermined plan, reinforcing that Defendant viewed Plaintiff's association with his disabled spouse as incompatible with continued performance in his role. Defendant assumed that Jefferson's work performance would decline because of his association with his disabled spouse.

35. Prior to Plaintiff's demotion and leave in late April 2022, Defendant had not identified any genuine performance deficiency that rendered Plaintiff unable to perform his job. Defendant's subsequent performance- or conduct-based explanations were inconsistent with its prior treatment of Plaintiff as a satisfactory and valued employee.

36. Plaintiff opposed Defendant's discriminatory actions and challenged the restrictions on telework by complaining directly to SAIC management.

37. In June 2022, when Plaintiff returned from leave, Defendant did not restore him to his prior role, leadership responsibilities, or normal working conditions. Defendant did not provide Plaintiff with access to work systems and accounts, which impeded his ability to perform his job functions.

38. Although Defendant initially authorized Plaintiff to telework under the same medical documentation previously approved in connection with his spouse's disability, that authorization was abruptly withdrawn.

39. Defendant also pressured Plaintiff to transfer to a different facility, Polygone, because of his need to telework, use flex time, and/or take leave to assist his disabled spouse.

40. The Polygone facility was significantly farther from Plaintiff's residence and incompatible with his ability to respond to his disabled spouse's medical needs. Plaintiff informed SAIC management that the reassignment would interfere with his ability to care for his spouse and objected on that basis.

41. Defendant pressured Plaintiff to voluntarily transfer to the Polygone facility solely because of Plaintiff's association with his disabled spouse and his use of telework, flex time, and/or leave to assist her.

42. On or about June 17, 2022, as a result of the continuous harassment related to his spouse's disability, Plaintiff notified Defendant in writing that he no longer required telework and instead would use personal leave, flex time, or otherwise adjust his schedule when he needed to assist his spouse with her medical needs. Despite Plaintiff's abandonment of his request to telework, Defendant refused to restore Plaintiff's leadership role, duties, or normal working conditions.

43. In July 2022, rather than restoring Plaintiff to his prior role and duties, Defendant placed Plaintiff on Leave Without Pay (LWOP).

44. On or about August 29, 2022, Defendant terminated Plaintiff's employment.

45. Defendant offered shifting explanations for placing Plaintiff on LWOP and terminating his employment, including telework-related concerns, alleged performance issues, and other asserted business justifications. These explanations were inconsistent, not uniformly applied to other employees, and contradicted by Defendant's prior treatment of Plaintiff as a satisfactory and valued employee, supporting a reasonable inference that Defendant's stated reasons were pretextual.

46. Rather than evaluating Plaintiff's actual performance, Defendant made employment decisions based on a predetermined belief that Plaintiff's association with his disabled spouse would interfere with his ability to meet job expectations. Defendant discriminated and retaliated against Plaintiff because of his association with a person with a known disability and because Plaintiff opposed Defendant's unlawful conduct.

47. This sequence of escalating actions—including the restriction of telework, removal from Lead responsibilities, imposition of leave, failure to restore normal working conditions, placement on LWOP, extension of unpaid status, and termination—began after Plaintiff

disclosed his spouse's disability and intensified over time as he opposed Defendant's discrimination against him.

48. The same SAIC decision-makers, including Chris Johnson and Matthew Jamison, were involved at each stage of this escalation. Defendant provided shifting justifications unsupported by contemporaneous documentation. The progression of these actions reflects not a neutral personnel process, but an escalating response to Plaintiff's efforts to utilize policies allowing telework, leave, and flex time to assist his disabled spouse, and his repeated opposition to Defendant's discriminatory actions.

## VI. COUNT I

## ADA ASSOCIATIONAL DISCRIMINATION

*(42 U.S.C. § 12112(b)(4))*

49. Plaintiff incorporates by reference the preceding paragraphs.

50. At all relevant times, Plaintiff was qualified to perform the essential functions of his position.

51. Defendant knew of Plaintiff's association with his disabled spouse, knew of her disability, and knew that Plaintiff provided care for her.

52. Defendant took adverse employment actions against Plaintiff, including restricting previously approved telework, removing him from his leadership role, forcing him into leave status, refusing to restore his duties, placing him on LWOP, extending that unpaid status, and terminating his employment.

53. Defendant took the adverse actions described herein because of Plaintiff's association with his disabled spouse. Defendant expressed the belief that Plaintiff's caregiving

responsibilities would reduce his availability and prevent him from completing work tasks or fulfilling his role as Lead Cyber/IA.

54. Defendant failed to conduct an individualized assessment of Plaintiff's actual ability to perform his job. Instead, Plaintiff's supervisors acted on generalized stereotypes and beliefs that Plaintiff's association with a disabled person, including his caregiving responsibilities, was inherently incompatible with his job. Defendant relied on assumptions regarding the impact of Plaintiff's spouse's disability on his stress levels, availability, and future job performance.

55. Defendant's conduct warrants punitive damages pursuant to 42 U.S.C. § 1981a. SAIC management engaged in discriminatory conduct with malice or reckless indifference to Plaintiff's federally protected rights as an employee associated with an individual with a known disability.

56. Defendant's code of conduct prohibits discrimination on the basis of disability and other "protected characteristics as established by applicable law." It references several anti-discrimination statutes, including the ADA, and states that those laws "prohibit federal contractors and subcontractors from discriminating on the basis of race, gender, age, color, religion, national origin, sexual orientation, gender identity, [and] disability."

57. All SAIC employees receive training concerning the requirements in the code of conduct, including compliance with federal anti-discrimination laws.

58. Defendant knew or had reason to know that discriminating and retaliating against Plaintiff by preventing him from engaging in telework two-days per week or using his leave or flex time to assist his disabled spouse violated the ADA.

59. By reason of the foregoing, Defendant discriminated against Plaintiff on the basis of his association with an individual with a disability, in violation of the ADA.

## VII. COUNT II

## ADA RETALIATION

*(42 U.S.C. § 12203)*

60. Plaintiff incorporates by reference the preceding paragraphs.

61. Plaintiff engaged in protected activity under the ADA by opposing Defendant's discriminatory conduct based on his association with his disabled spouse. His protected activity included resisting Defendant's efforts to restrict his previously approved telework arrangement, opposing Defendant's treatment of his caregiving responsibilities as incompatible with his Lead role, and objecting to Defendant's decision to place him on leave because of his spouse's disability.

62. Starting in April 2022 and continuing through his termination in August 2022, Plaintiff repeatedly raised concerns about the discriminatory and retaliatory treatment he was experiencing and the impact those actions had on his ability to assist his disabled spouse. Defendant rejected Plaintiff's concerns and instead escalated its adverse actions.

63. Defendant, through its management, was aware of Plaintiff's protected activity. Plaintiff directly communicated to Johnson and Jamison, among others, his objections to their statements and actions related to his association with his disabled spouse and his work arrangements. In or around June 2022, Jefferson objected to Defendant's inconsistent application of its teleworking policy.

64. After Plaintiff engaged in protected activity, Defendant subjected him to materially adverse actions, including restricting his telework, removing him from his leadership role, placing him on leave, refusing to restore his duties, and ultimately terminating his employment.

65. These actions occurred in close temporal proximity to Plaintiff's opposition and were carried out by the same individuals to whom Plaintiff directed his objections, supporting a causal connection between Plaintiff's protected activity and Defendant's conduct.

66. Even after Plaintiff withdrew his telework request and attempted to comply with Defendant's demands by relying on leave or adjusting his schedule, Defendant escalated its adverse actions rather than restoring Plaintiff's role.

67. Plaintiff's protected activity caused Defendant's adverse actions against him, and those actions would not have occurred in the absence of Plaintiff's protected activity. The close temporal proximity between Plaintiff's protected activity and Defendant's escalating adverse actions supports this inference.

68. The causal connection between Plaintiff's protected activity and Defendant's adverse actions is further reinforced by the fact that the same SAIC decision-makers—including Chris Johnson and Matthew Jamison—who received Plaintiff's complaints were directly and contemporaneously involved in the decisions to remove Plaintiff from his leadership role, force him into leave, refuse to restore his duties, and terminate his employment.

69. By reason of the foregoing, Defendant violated the ADA's anti-retaliation provision.

## VIII. PRAYER FOR RELIEF

70. WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

A. A declaration that Defendant's actions violated the Americans with Disabilities Act;

B. Injunctive relief requiring Defendant to cease and desist from unlawful employment practices in violation of the ADA;

C. Reinstatement to Plaintiff's former position or, in the alternative, front pay in lieu of reinstatement;

D. Back pay, including lost wages, salary, bonuses, benefits, and all other forms of compensation Plaintiff would have received but for Defendant's unlawful conduct;

E. Compensatory damages, including damages for out-of-pocket costs, emotional distress, pain and suffering, inconvenience, and loss of enjoyment of life;

F. Punitive damages as permitted under 42 U.S.C. § 1981a;

G. Pre-judgment and post-judgment interest as permitted by law;

H. Reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 12205; and

I. Such other and further relief as the Court deems just and proper.

**IX. JURY DEMAND**

71. Plaintiff demands a trial by jury on all issues so triable.

Dated: April 14, 2026

Respectfully submitted,
<u>*s/ Richard E. Condit*</u>
Richard E. Condit
Cleveland Lawrence III
Britt Dillman
Dee Um
MEHRI & SKALET, PLLC
2000 K St NW, Suite 325
Washington DC, 20006
T: (202) 822-5100
rcondit@findjustice.com

clawrence@findjustice.com
bdillman@findjustice.com
dum@findjustice.com

*Counsel for Marselles Jefferson*